UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

UNITED STATES OF AMERICA    )
                       )       1:22-cr-00068-SE
     v.              )
                       )
KYLE MORRIS           )

UNITED STATES' MOTION FOR DETENTION

I.   <u>Introduction</u>.

      Defendant Kyle Morris is charged with the possession of two machineguns. Under the

Bail Reform Act, 18 U.S.C. § 3142, the United States requests that the Court detain Morris

pending trial. For the reasons set forth below, including his possession of illegally modified

machineguns, self-avowed extremism, violent rhetoric, and search history regarding illegal

weapon modifications and creation of explosives, there is no condition or combination of

conditions that can reasonably assure the safety of any other person and the community.

II.   <u>The bail reform act</u>.

      The Bail Reform Act authorizes the Court to detain a criminal defendant upon finding

that "no condition or combination of conditions will reasonably assure the appearance of the

person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e);

*see also* 18 U.S.C. § 3142(f)(1)(E) (authorizing the government to seek detention in a felony case

that involves the possession or use of a firearm). In making its bail determination, the Court is

required to consider information regarding: (1) the nature and circumstances of the offense

charged, (2) the weight of the evidence, (3) the history and characteristics of the defendant, and

(4) the nature and seriousness of the danger to any other person or the community that would be

posed by the defendant's release. 18 U.S.C. § 3142(g). The Government bears the burden of

demonstrating dangerousness by clear and convincing evidence and must support a finding of

risk of flight by a preponderance of the evidence. *United States v. Johnson*, 12-mj-01-01-LM, 2012 WL 40463, at *2 (D.N.H. Jan. 6, 2012). Detaining the defendant is appropriate here because each of the factors set forth in 18 U.S.C. § 3142(g) weighs heavily in favor of detention pending trial.

    III. <u>The nature and circumstance of the offense charged.</u>

       The indictment alleges that in February of 2022 the defendant possessed two machineguns, in violation of 18 U.S.C. § 922(o).  The United States will proffer the following facts:

       On February 16, 2022, FBI agents executed a search warrant at Morris' Salem, New Hampshire, home.  During the search, agents found two rifles—a 5.56x45mm Palmetto State Armory rifle, Model M4 Carbine, Serial Number W1020308, and 5.56x45mm Brownells Inc. rifle, Model BRN-16A1, Serial Number BRN7929—in a locked closet on the second floor of the home.  An ATF agent conducted a cursory review of the rifles on site and, after a field test, believed the firearms were likely fully automatic.  The rifles were sent to the FBI laboratory for further testing, where an expert determined that both functioned normally in both semi- and full-automatic modes. Therefore, under 18 U.S.C. § 922(o), both the weapons are machineguns.

       The evidence also indicates that Morris possessed the machineguns and knew that they were machineguns.  Morris is the owner and primary resident of the home where the machineguns were found.  Though Morris rents out rooms in the house, multiple witnesses told law enforcement that Morris stores his firearms in a locked closet in the home.  A tenant informed law enforcement that only Morris had access to the locked closet.   In addition, during a phone call with law enforcement on June 14, 2022, Morris confirmed that he is the only

individual who had access to the locked closet where the machineguns were found.  Indeed, Morris referred to it as "my gun room."

Other items in the closet also evidence Morris' access and control over that space. The closet contained approximately 25 of Morris' other firearms.  It also contained Nazi paraphernalia items that had previously been shipped to Morris.  In addition, it contained an FBI agent's business card that the agent personally handed to Morris months before.

Evidence from Morris' cellphone, obtained by law enforcement in June of 2021, indicates that Morris not only knew that the weapons recovered from the closet were machineguns, but also that he likely modified the firearms himself.  Morris searched "full auto conversion," the process of converting a semi-automatic firearm to a fully automatic firearm. Additionally, Morris had AR-15 and AK-47 conversion manuals stored as bookmarks on his internet browser; both documents explain how to convert these firearms from semi-automatic to illegal fully automatic machineguns.  In addition, the phone contained a conversation from July of 2020 where Morris, using his online pseudonym "Coil," discussed selling a fully automatic AK-47 to another individual:



Finally, during the February search of Morris' home, Morris told law enforcement that he had a drill press and that he used the drill press build his AR and M-16 upper.

IV. <u>Weight of Evidence</u>

The weight of the evidence is strong. The government's evidence will include the machineguns, Morris' own statements about his ownership and access to the area where the machineguns were found, and Morris' knowledge of firearms, including research on how to convert rifles into machineguns.

V. <u>History and Characteristics of Defendant</u>

The Court must also consider the defendant's individual history and characteristics, including, among other factors, his character, family ties, employment, financial resources, past conduct, history relating to drug or alcohol abuse, and criminal history. 18 U.S.C. § 3142(g)(3)(A)-(B).

Morris' statements demonstrate his danger to the community and propensity for violence. Communications from Morris' cellphone show his disturbingly violent rhetoric and his status as an extremist white supremacist.  Though early conversations recovered on the phone seem to disavow violence, Morris appears to have begun advocating for violence in July of 2020:



On July 31, 2020, Morris advocated for a violent takeover of a building in Massachusetts along with starting a "race war" and raising a swastika over a "symbolic building" in Massachusetts:



Morris spoke of attacking "Mosques, Synagogues, Diversity centers and businesses that hire non whites," and that he was willing to die in those attacks. Morris wanted "10 attacks across mass" culminating in a final attack, what Morris described as "one big one."  Morris envisioned the final "big" attack to include someone driving a truck into the Massachusetts statehouse and blowing it up. In addition to these chats, Morris's internet search history includes searches of how to make explosives, consistent with his messages about his desire to "blow up" a building. The investigation reveled that Morris was a member of Nationalist Social Club-131 ("NSC-131"), a neo-Nazi organization that is active in New Englance.

Morris also has a history of abusing marijuana.  Evidence obtained from Morris' phone includes videos depicting Morris smoking marijuana, internet searches on how to grow marijuana, and calendar alerts related to growing marijuana.  Morris' marijuana use coincides with his purchase of various firearms from federal firearms licensees.  During each purchase, Morris completed a form 4473 and swore that he was not an unlawful user of marijuana.

Finally, following Morris' June 16, 2022, arrest, Morris asked about the pending charges. Upon hearing that he was charged with a firearms offense, Morris told law enforcement that firearms laws are just "paper laws" and that the FBI had no authority over him.

VI. <u>Nature and Seriousness of Danger Posed by Defendant</u>

Morris, through online chatrooms and conversations with those close with him, demonstrated his idolization, planning, and encouragement of hate filled violence.  In his conversations, he also encouraged others to commit acts of violence.  Further, he has demonstrated he has the access, knowledge, and skills necessary to convert a firearm into a machinegun.  The nature of this crime, combined with the defendant's violent rhetoric and membership in a neo-Nazi organization, demonstrate that the defendant poses a danger to the community.

There is "no condition or combination of conditions" that will reasonably assure the the safety of any other person and the community. 18 U.S.C. § 3142(e).  Release on conditions "would not necessarily inhibit the defendant from contacting … like-minded individuals to arrange acts of violence against … others with whom he takes issue because of their race, gender, religion, or sexual orientation."  *United States v. Zrallack*, No. 3:10CR68 (JCH), 2010 WL 2682527, at *4 (D. Conn. July 2, 2010) ("[G]iven the strength of the government's case and the likelihood that the defendant will be convicted and incarcerated, releasing the defendant to home confinement is likely to provide his last chance for awhile to act on the beliefs which have apparently fueled his involvement in this organization for most of his adult life.").

VII.   <u>Conclusion</u>

For all of these reasons, the United States respectfully requests the Court order that the defendant be detained pending trial.

Respectfully submitted,

JANE E. YOUNG
United States Attorney

Date: June 17, 2022          <u>/s/ Anna Z. Krasinski</u>
Assistant U.S. Attorney
WV Bar # 12762
53 Pleasant Street, 4th Floor
Concord, New Hampshire 03301
(603) 225-1552
anna.krasinski@usdoj.gov