UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

UNITED STATES OF AMERICA

v.  1:22-cr-00068-SE

KYLE MORRIS

**MOTION FOR REVOCATION OF DETENTION ORDER
AND REQUEST FOR EXPEDITED HEARING**

COMES NOW the defendant Kyle Morris, by his counsel, Jeffrey S. Levin, Assistant Federal Defender, and pursuant to 18 U.S.C. § 3145(b), moves this Honorable Court to revoke the order of detention imposed by Magistrate Judge Andrea Johnstone on June 21, 2022. Kyle requests an expedited hearing of this matter pursuant to 18 U.S.C. § 3145(b), which requires that such motions be determined promptly.

**Introduction**

Kyle Morris is a 22-year-old, highly decorated U.S. Army veteran of the War in Afghanistan who is charged by indictment with one count of possession of a machinegun in violation of 18 U.S.C. § 922(o). The offense is alleged to have occurred in February 2022, Mr. Morris was not indicted until June 2022 (4 months later), and he was arrested without incident in his home (the same home where he grew up and which he now owns, and the same home where the search was conducted) on June 16, 2022.

Kyle and made his initial appearance before Magistrate Judge Johnstone on June 16, the date of his arrest. The government asked for and was granted a three-day continuance before the detention hearing was held. On June 21, 2022, Magistrate Judge Johnstone held a detention hearing and determined that he presents a danger and that there are no conditions that would

1

reasonably assure the safety of the community. The government did not argue, and so the Court did not find, that Kyle presented a risk of flight.

The Court made the following findings to support its detention order: weight of evidence against the defendant is strong; history of violence or use of weapons, including electronic communications regarding efforts to sell fully automatic AK-47 to another individual; history of alcohol or substance abuse; evidence that following contact with FBI defendant smashed cell phone and computer and disposed them into the garbage; statements to law enforcement that FBI was kidnapping him, lacked authority, that charges were just "paper laws"; minimized substance use and recent history; and defendant's history and characteristics related to violent rhetoric, advocacy for violence, including violent takeover of a building in Massachusetts, attacking mosques, synagogues, diversity centers and businesses that hire non-whites. *Doc. No. 10.*

Kyle appeals these finding and argues as follows. 1) The weight of the evidence will be determined by ATF expert reports which have not yet been provided to the Court or to counsel. 2) Kyle has no history of violence, and no criminal record whatsoever. 3) While Kyle did possess weapons, he was not prohibited from possessing them. He does not believe the weapons at issue are machineguns. 4) Kyle is not an alcoholic and has no substance abuse issues; he tested negative for any substance upon arrest and was honest with probation about his past marijuana and CBD use. 5) There is no evidence that Kyle smashed his computer or cell phone to evade detection by law enforcement; the phone was broken in a car accident and he smashed it when he threw it away because this is a good practice. Kyle had no inkling that the FBI was rooting around in his garbage; if he wanted to destroy evidence there are much better, safer ways he could have disposed of these items. 6) Kyle denies making the statements to the agents that are

attributed to him and he was nothing but cooperative with the agents who first interrogated him, then searched his house, then arrested him. 7) Finally, statements attributed to him are two years old and made in a private forum, shortly after he was discharged from the military; in any event these are not reflective of his actual thinking, then or now.

## Argument

I. **The Court Must Consider All Reasonable Alternatives to Detention**

    A. **The Charges in the Indictment Require a Presumption in Favor of Release**

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987). The Bail Reform Act "carefully limits the circumstances under which detention may be sought to the most serious crimes." *Id.* at 747, citing 18 U.S.C. § 3142(f). Pretrial deprivation of liberty implicates the Due Process Clause of the Fifth Amendment. *Id.* at 746. Accordingly, the Bail Reform Act of 1984 provides that a defendant must be released on their personal recognizance or an unsecured personal bond "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b).

Under circumstances in which a personal recognizance bond is insufficient, the officer must choose "the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). In other words, the Court must consider all reasonable less restrictive alternatives to detention. *See* 18 U.S.C. § 3142(e); *see* United States v. Infelise, 934 F.2d 103, 105 (7th Cir. 1991) (remanding because

defendants proposed electronic surveillance anklets rather than detention, and trial court failed to consider whether it was a reasonable alternative).

Moreover, conditions set upon release are intended to be preventative and not punitive in nature. United States v. Salerno, 481 U.S. 739, 747 (1987) (evaluating the legislative history of § 3142). In sum, the Bail Reform Act does not modify or limit the presumption of innocence. *See* 18 U.S.C. § 3142(j).

**B.     Legal standard**

Certain offenses carry a presumption of detention, pursuant to 18 U.S.C. § 3142(a)(3). This is not one of them.

To support a finding that the defendant should be detained, the government bears the burden of showing: (1) by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community, or (2) that no condition or combination of conditions will reasonably assure the appearance of the defendant as required. 18 U.S.C. § 3142(f).

In determining whether conditions exist that will reasonably assure the appearance of the defendant as required, the Court should take into account:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

> (B) whether, at the time of the current offense or arrrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

## II. Numerous Factors Weigh Against A Finding that No Combination of Conditions Will Reasonably Assure the Defendant's Appearance or Community Safety

### A. History and Characteristics of the Defendant

Kyle Morris is a 22-year-old man, born in Methuen, Massachusetts, and raised in Salem, New Hampshire. Kyle graduated from Salem (NH) High School in 2016 and has some college credits. Kyle still resides in his family home in Salem; he purchased it from his grandfather, Alan Hill, recently.

Kyle served in the U.S. Army from 2016 to 2020 (from age 17 to age 20). He was honorably discharged with a rank of E-4 (Specialist). He served overseas as a combat engineer in the War in Afghanistan in 2018 and 2019. Kyle was stationed at Fort Knox, Kentucky, and at Camp Shorabak in Helmand Province, Afghanistan.

Kyle received numerous military honors for his military service, including but not limited to the following: National Defense Service Medal, Army Service Ribbon, Global War on Terror Medal, NATO Non-Article 5 Medal; Overseas Service Medal; Army Achievement Medal (x 2, including one for Combat); Army Good Conduct Medal; Afghanistan Campaign Medal; and Combat Action Badge. Kyle's good conduct while in the military are a strong indication that he will abide by whatever conditions the Court sets for his release.

Kyle's father is deceased (he died of a fentanyl overdose when Kyle was 14 years old).

His mother Nancy Morris resides in South Carolina. Kyle's sister Caitlyn Morris lives in Hill, New Hampshire; she is engaged to be married. Kyle's maternal grandparents Alan and Karen Hill reside in Salem, New Hampshire. Kyle's paternal grandmother Mary Morris resides in Merrimack, Massachusetts. Kyle has numerous aunts, uncles, and cousins residing locally as well.

Kyle is very close with his sister Caitlyn and his grandparents. He also has a girlfriend with whom he is very close, Anna Maria Holodowska, who resides in Milford. Kyle's sister Caitlyn and her fiance Frankie, his girlfriend Anna Maria Holodowska, and all three of his grandparents appeared for his detention hearing on June 21.

Kyle works as a food delivery driver, driving for DoorDash in the Salem area and has done so since 2021. He also rents rooms in his home to be able to afford his mortgage. Kyle has had other jobs in the past. He is willing to find a different job, with regular hours, if ordered to by the Court as a bail condition. Kyle has always worked and is a hard worker, above and beyond his military service.

Kyle suffers from combat-related PTSD and has begun the process of being treated through the VA. He has contacted the Veteran Center and in fact was scheduled for an appointment today. He has also contacted the NH Justice-Involved Veteran Outreach Center for support. Kyle receives prescribed medication (Lexapro) for PTSD, anxiety, and depression.

Kyle has no absolutely criminal history. He has zero criminal history points and is a criminal history category I. He also has no supervision failures. At the time of the current alleged offense or arrest, Kyle was not on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law.

### B. The Nature of the Offense

The indictment alleges that in February 2022 Kyle possessed "at least one of the following machineguns: a 5.56x45mm Palmetto State Armory rifle, Model M4 Carbine, Serial Number W1020308; and a 5.56x45mm Brownells Inc. rifle, Model BRN-16A1, Serial Number BRN7929[,]" in violation of 18 U.S.C. § 922(o). The government's charges are based on evidence allegedly seized during a February 2022 search of his residence. Defense counsel has not received the discovery yet or any expert reports and so cannot comment as to whether this is a valid charge.

### C. Weight of the Evidence

"[T]he weight of the evidence is the least important of the various factors" to be considered by the Court in determining whether conditions exist which will reasonably assure the appearance of Kyle. U.S. v. Motamedi, 767 F.2d 1403, 1408 (9th Cir. 1985). The weight of the evidence is the least important factor because Kyle is presumed to be innocent. *See* 18 U.S.C. § 3142(j).

Moreover, even "evidence of the commission of a serious crime and the fact of a potentially long sentence" alone is insufficient "to support a finding of risk of flight." United States v. Friedman, 837 F.2d 48, 50 (2d Cir. 1988). In this case, Kyle is likely facing no more than 1-2 years in prison, even if convicted after a trial, based upon the 2021 U.S. Sentencing commission sentencing guidelines which apply in the case. Accordingly, the weight of the evidence does not require Kyle to be detained pending trial.

### D. The Defendant Is Not A Flight Risk

Kyle is clearly not a flight risk. If he were considered a flight risk, the government would

have arrested him months ago, on a complaint, instead of waiting four months to indict him. Kyle stayed right where he was after law enforcement officers searched his residence - the same home where he has lived for his entire life, the same home which he now owns. Kyle's actions in this regard demonstrate clearly that he is not a flight risk. In fact, Kyle would have voluntarily appeared had he been summonsed to court rather than arrested.

Given the nature of the charge against him, and the operative 2021 sentencing guidelines, Kyle likely faces a relatively low sentencing guideline range. Thus, there is less incentive for Kyle to flee. This is not a case where it can be argued that the defendant is facing a lengthy prison sentence and is therefore likely to flee.

Also, Kyle has deep roots in this community, and family members with whom he is very close. In fact he has substantial ties to New Hampshire, having lived here for his entire life. Kyle has no incentive to flee, and nowhere to flee to.

Kyle is a decorated U.S. Army veteran and thus is entitled to receive mental health services and other benefits through the VA. Were Kyle to flee, he would lose access to these vital services. This is another factor weighing in favor a finding that he is not a flight risk.

### E.     The Defendant Is Not a Danger[1]

Kyle does not present a danger to the community or himself. He has no history of

---

[1] Legislative history shows that pretrial detention on dangerousness grounds was permitted by Congress "in the recognition that 'a small but identifiable group of *particularly dangerous defendants* as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons. It is with respect to this *limited group of offenders* that the courts must be given the power to deny release pending trial.'" United States. v. Chimurenga, 760 F.2d 400, 402 (2d Cir. 1985) (*quoting* S.Rep. No. 225, 98th Cong., 1st Sess. 6-7, reprinted in 1984 U.S.Code Cong. & Ad.News, P.L. 98-473, at 3188-3189); *see also* United States v. Ploof, 851 F.2d 7, 11 (1st Cir. 1988).

violence, and no violent criminal convictions associated with his record. Most notably, he has no arrests of any kind associated with his record. He has zero criminal history points, and is therefore a criminal history category I.

The government cites two-year-old internet postings or text messages from 2020 to argue that Kyle is a danger based on "violent rhetoric," and similarly old postings relative to cultivation of marijuana to argue that he has "a history of abusing marijuana." Yet Kyle tested negative for marijuana (which has been decriminalized in this state) when he was arrested for this offense.[2] He told the probation officer that while he used marijuana in the past, he no longer uses it, and the test results bore that out.

The government can point to no actual recent conduct on Kyle's part to indicate that he presents a danger now. Kyle should not be detained for ideas he expressed in private, on his cellphone, two years ago. Kyle has a First Amendment right to express himself in that way, as distasteful as government's counsel finds that to be. There is no evidence that Kyle intended to act on the ideas he expressed two years ago, or that these were not just online puffery to shock or impress his online friends. The Court held these against Kyle without factoring in that these statements were made in 2020, right after he was released from the military, in the middle of the pandemic and during a summer when there were riots breaking out in many American cities. The Court also did not factor in that Kyle made other statements to indicate that he was not in favor of violence, or that he has not made any more recent statements in the past two years to indicate that he still holds these views.

---

[2] The bail report erroneously stated that Kyle was unable to provide a urine sample upon arrest. In fact, Kyle did provide a urine sample, and that urine sample tested negative.

The government argues that releasing Kyle on bail will not inhibit him from committing acts of violence as releasing him will enable him to do so. Kyle was first approached by law enforcement in May 2021, when he was first threatened with prosecution. He was approached again in February 2022 when law enforcement searched his home pursuant to a warrant. He was then called on the phone by law enforcement apparently the same day as he was arrested. For over a year Kyle continued to act lawfully even as law enforcement approached him again and again. Kyle clearly demonstrated that he is not a danger, based on his peaceful actions during this 13-month time period. In fact, there is no evidence, based on Kyle's conduct over the past two years, and/or based on his conduct while being repeatedly approached by law enforcement over the past thirteen months, that he presents any danger to himself or the community.

The probation officer wrongly accused Kyle of lying to the Court about firearms he possessed when he was arrested. Kyle was honest when he was asked about firearms in his residence. He told the officer about a 1930s pistol and a Carcano rifle, among other items he possessed. These two items – a 1934 Berretta pistol and a Carcano rifle – are the only firearms he possessed when arrested. He did not report the "revolver/pistol" or the "black rifle-looking firearm" described in the report, as these are airsoft guns and not firearms. The probation officer characterized these as lies without asking Kyle or his counsel about them first. In fact, Kyle was truthful with the probation officer about these items. Instead of counting against him, this candor should weigh in his favor.

No memorandum of law is attached as all points and authorities are contained herein.

This is a dispositive bail appeal, and the government initially moved for Kyle's detention, so concurrence was not sought.

WHEREFORE, Kyle Morris respectfully requests that this court set this matter for an expedited hearing, as soon as is practicable, to set appropriate conditions for his release, and for such other relief as may be deemed just.

Respectfully submitted,

Date: June 21, 2022

*/s/ Jeffrey S. Levin*
Jeffrey S. Levin
N.H. Bar No. 12901
Assistant Federal Defender
22 Bridge Street, 3rd floor
Concord, NH 03301
Tel. (603) 226-7360
E-mail: Jeff_Levin@fd.org

## Certificate of Service

I hereby certify that the above document was served on the following person on June 21, 2022, and in the manner specified herein: electronically served through CM/ECF to AUSA Anna Krasinski.

*/s/ Jeffrey S. Levin*
Jeffrey S. Levin