UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

_____

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Cr. No. 22-CR-00068-SE |
| v. | ) | |
| | ) | |
| KYLE MORRIS | ) | |

_____)

## SENTENCING MEMORANDUM AND MOTION FOR *BOOKER* VARIANCE

NOW COMES the Defendant, Kyle Morris, by and through his counsel, Wilson, Bush & Keefe, P.C. ("the Defendant"), and hereby files the present sentencing memorandum and motion for *Booker* variance, respectfully requesting that the Court impose a sentence of time-served (which would be substantively the equivalent of 12 months and one day of incarceration) followed by a term of supervised release. In the alternative, should the Court impose a sentence longer than time-served, the Defendant respectfully requests that the Court impose a sentence of 12 months and one day followed by a term of supervised release. In support thereof, the Defendant submits the following:

This motion is predicated upon the Court's Standing Order on Procedure for Requesting Deviation from Sentencing Guidelines; 18 U.S.C. § 3553(a); United States v. Booker, 543 U.S. 220 (2005); Rita v. United States, 551 U.S. 338 (2007); Kimbrough v. United States, 552 U.S. 85 (2007); Gall v. United States, 552 U.S. 38 (2007); United States v. Jimenez-Beltre, 440 F.3d 514 (1st Cir. 2006), *cert. denied*, 127 S.Ct. 928 (2007); and their progeny.

## I.     Introduction

On June 13, 2022, the government obtained a one-count indictment charging Kyle Morris ("Kyle") with Possession of a Machinegun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2).  Law enforcement arrested Kyle on June 16, 2022.  Kyle made his initial appearance before the Court that day, and the Court temporarily detained him pending a further hearing.  The Court detained Kyle after several hearings regarding detention.  On February 8, 2021, the government obtained a seven-count indictment charging him with six counts of Threats Against a Federal Official in violation of 18 U.S.C. § 115(a)(1)(B) and one count of Interstate Threatening Communications in violation of 18 U.S.C. § 875(c).

Pursuant to continuous discussions with the government, on January 17, 2023, Kyle pled guilty to counts one of the indictment.  The Court then scheduled this matter for sentencing.

Regarding his pre-trial adjustment to his more than 10 months of incarceration, Kyle has had no incidents or disciplinary actions while he has been incarcerated at the Strafford County Department of Corrections.

Kyle has used his incarceration to reflect not only upon the acts with which he is charged here, but also what led to those acts.  This has involved an incredible amount of self-reflection and honest consideration of what brought him from being a decorated and honorably-discharged combat veteran to someone charged in United States federal court with a federal felony.  Kyle is not proud that of the decisions and actions that led him to this point in his life, but he understands that he must bear the consequences of those things.

The trauma and experience Kyle endured while serving our country in combat are a large reason for why he is before this Court.  He saw and experienced horrible things while a combat engineer, and he experiences severe Post-Traumatic Stress Syndrome.  He is a young

2

with the means and ability to address the underlying causes of what brought him here, and he has a plan to do just that.  He has endured the punishment of incarceration, the Court should now let him begin the process of rehabilitation.

## II.    Guideline Analysis

Kyle has accepted responsibility for the subject crime in this matter.  In substance, he agrees with the government's statement of offense conduct:  he possessed two firearms that qualify as "machineguns" under federal law.  More importantly, although counsel does not believe it should be a sentencing consideration for the Court, Kyle has denounced the disgusting, offensive, and violent language and thoughts revealed during this matter – during the detention hearings and referenced in the Presentence Report.  As the Court will hear more from Kyle at sentencing, he has used his time while incarcerated to reflect on the thought patterns and beliefs he expressed.  He does not and will not seek to excuse those things, but he would like the Court to know that he is humiliated not just by his words but as well by the thought patterns that caused him to espouse those things and possess such things as Nazi memorabilia.  Ten months in jail, without exposure to such groups and thoughts, have allowed Kyle to understand the dysfunctional group-think to which he subscribed and its effect on our country as a whole.

As well, and although the government does not assert that Kyle ever did anything with the two machineguns.  He never used them to threaten or harm anyone.  He also vehemently asserts he had no such intent to carry out any of the things referenced in the PSR.  Kyle will not parse the word choice and verbiage used in the messages.  They are disgusting.

The PSR correctly captures the technical guideline calculation in this case.  The base offense level is 18.

Finally, as stated, Kyle has accepted full responsibility for his crimes and is awarded a three-level downward adjustment.  Therefore, using an adjusted base offense level of 18, subtracting the three levels for acceptance of responsibility, Kyle's total offense level becomes 15.  With a CHC of I, this places him in a range of 18 to 24 months in the U.S.S.G. Sentencing Table.

 For the reasons that follow, Kyle requests that this Court vary downward to the requested sentence.

III.    **Motion for <u>Booker</u> Variance**

A.    **Legal Basis**

Kyle moves for a variance from the sentencing guideline range relevant here.  Such a variance may be premised on the following:  the Court's <u>Standing Order on Procedure for Requesting Deviation from Sentencing Guidelines</u>; 18 U.S.C. § 3553(a); <u>United States v. Booker</u>, 543 U.S. 220 (2005) (making the U.S.S.G. advisory only)[1]; <u>Rita v. United States</u>, 551 U.S. 338, 127 S.Ct. 2456 (2007); <u>Kimbrough v. United States</u>, 522 U.S. 85, 128 S.Ct.

---

[1] The sentencing factors which <u>Booker</u> requires the district courts to consider include:
   (1)  the nature and circumstances of the offense and the history and characteristics of the defendant [§3553(a)(1)];
   (2)  the need for the sentence imposed-
      (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
      (B) to afford adequate deterrence to criminal conduct;
      (C) to protect the public from further crimes by the defendant; and
      (D) to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner [§3553(a)(2)];
   (3)  the kinds of sentences available [§3553(a)(3)];
   (4)  the guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range [§3553(a)(4) and (5)];
   (5)  the need to avoid unwarranted sentencing disparity among defendants with similar records that have been found guilty of similar conduct [§3553(a)(6)]; and
   (6)  the need to provide restitution to any victims of the offense(s) [§3553(a)(7)].

558 (2007); <u>Gall v. United States</u>, 522 U.S. 38, 128 S.Ct. 586 (2007); <u>United States v. Jimenez-Beltre</u>, 440 F.3d 514 (1st Cir. 2006), *cert. denied* 127 S.Ct. 928 (2007).

In light of the fact that the U.S.S.G. are now only advisory, this Court may now consider those mitigating factors that the advisory guidelines prohibit: e.g., poverty, racial discrimination and humiliation, drug abuse and addiction, dysfunctional family background, lack of guidance as a youth, etc. <u>See United States v. Ranum</u>, 353 F.Supp.2d 984 (E.D. Wisc. 2005) ("The guidelines' prohibition of considering these factors cannot be squared with the Section 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant.'"); <u>United States v. Myers</u>**,** 353 F.Supp.2d 1026 ((S.D. Iowa, 2005) ("The guidelines prohibition of considering these factors cannot be squared with the § 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant....Thus, in cases in which a defendant's history and character are positive, consideration of all of the § 3553(a) factors might call for a sentence outside the guideline range."); <u>United States v. Jaber</u>**,** 362 F.Supp.2d 365 (D. Mass. 2005) ("*Booker* plainly allows courts to look carefully at those factors and to determine to what degree they are relevant to individual cases").

As well, Congress had directed that the district court "shall impose a sentence **sufficient, *but not greater than necessary***, to comply with [the purposes of sentencing]" (emphasis added). 18 U.S.C. § 3553(a) (emphasis added). This is the "primary directive" of the sentencing statute. <u>Ranum</u>, 353 F.Supp. 2d at 986; <u>United States v. Pirani</u>, 406 F.3d 543, 564 (8th Cir. 2005) (<u>Bye</u>, J., dissenting) ("factors previously deemed ordinarily irrelevant to sentencing under Chapter 5H of the guidelines such as the defendant's age, education and vocational skills, mental and emotional conditions, physical condition, employment record,

family ties and responsibilities, and charitable service are now valid considerations for a court in imposing a sentence").

Arguably, no special weight is to be given to the advisory guidelines or other factors mentioned in the statute. <u>See</u> <u>United States v. Okai</u>, 2005 WL 2042301 (D. Neb. August 22, 2005) ("The Guidelines range is thus one of many factors for the sentencing court to consider, and although the court is not bound by the Guidelines, it must consult them and take them into account when sentencing."); <u>Pirani</u>, 406 F.3d at 564 ("in addition to consideration of the guideline range the court must give equal consideration to sentencing factors such as just punishment, deterrence, incapacitation, rehabilitation, and the need for the sentence to reflect the nature and circumstances of the offense and the history and characteristics of the defendant"); <u>Jaber</u>**,** 362 F.Supp.2d at 365 (advisory does not mean **"**slavish application of the Guidelines under the guise of fair "consideration"); <u>United States v. Moreland</u> 366 F.Supp.2d 416 (S.D.W.Va. 2005) ("while I respect the advice of the Guidelines and give it serious consideration, I do not view that advice as carrying greater weight than any of the other § 3553(a) factors"); <u>United States v. Biheiri</u> 356 F.Supp.2d 589 (E.D.Va. 2005) ("no individual factor is singled out as having greater weight; instead, the richness of factual diversity in cases calls on sentencing judges to consider all of the factors and to accord each factor the weight it deserves under the circumstances.").

**B.      Nature and Circumstances of the Offense, History and Characteristics of the Defendant, and Defendant's Family Ties and Responsibilities**

Kyle possessed two firearms that could operate in both semi-automatic and full-automatic mode.  Kyle notes that the room in his home in which these items were found was

locked.  Both Kyle's girlfriend and a tenant/roommate in the home confirmed that only Kyle had access to the locked room.

By doing so, he jeopardized his freedom, placed great burdens on his family, caused the government to expend resources, and besmirched his incredibly honorable military service.  For his actions and their consequences on others, Kyle has great remorse.  He presents himself to this Court as a humble young man who did an incredibly stupid thing during a time of strained mental health.  He understands atonement includes punishment by this Court, and part of that punishment has been the time he has relinquished his freedom due to his own actions.

1.    Personal History, Family Ties, Characteristics

Kyle understands he suffers from Post-Traumatic Stress Disorder from his combat service in Afghanistan, depression, as well as panic attacks.  All of these derive from his combat experience while in the United States Army.  During his pretrial detention process, Kyle met with Christopher Dearborn, who is the Veterans Administration court liaison.  He evaluated Kyle for services, and he appeared before this Court in support of Kyle at his detention review hearing.  He will coordinate with Kyle in order for him to obtain the appropriate mental health services upon his release.

During his meeting with Mr. Dearborn, Kyle reported that in addition to his identified mental health concerns, he suffered symptoms that began soon after his return from combat and continued through his arrest that include:  lack of motivation, anhedonia, constant thoughts of death, hypersomnia, decreased optimism, and negative thinking.  Kyle reported that his symptoms are cyclic and relate to his anxiety, and that they last for periods of two-to-four weeks at a time.

Kyle reported symptoms consistent with Post-Traumatic Stress Disorder:  changes in emotional reactions (i.e., physical response) to loud or surprising noises, a heightened startle reaction, hypervigilance, problems concentrating, low self-concept, anger, and a sense of foreshortened future.  Kyle minimized to Mr. Dearborn that his exposure to potential harm related to his Forward Operating Base being subject to routine mortar fire; however, he did note that one, three-day barrage of mortar fire was stressful.  Not surprisingly, Kyle suffers from nightmares due to his combat experience.

Kyle's panic attacks can become life-interrupting such that he feels sick.  He began to experience panic attacks in December 2020.  His roommate talked him out of seeking professional treatment for this, and he has experienced such attacks once or twice per week since they began.

Kyle is only 23 years old.  His parents divorced when he was 10 years old.  In addition to the dissolution of his parents' marriage, Kyle's father died from a heroin overdose when hew as 14 years old.  This greatly, and negatively, affected Kyle.

After leaving school, Kyle worked in manual labor.  During his teenage years, Kyle describes things as "rough" for him as he felt lost, without any real guidance or support, and the only type of guidance being provided was through the Church of Scientology.  As one can imagine, this was not helpful and only made things worse for Kyle.  Such an existence led Kyle to contemplate suicide as a young teenager.  In addition to this devastating trauma due to how Kyle viewed his father, Kyle's mother suffers from bipolar disorder.  She was physically and mentally abusive towards him his entire life.  His mother once told him she hoped he would die.  Kyle stopped speaking to his mother altogether several years ago.  He

8

has a good relationship with his one sister, Caitlin, who has been active in support of him during this case.

Kyle has been in a healthy and supportive relationship with Anna Maria Holodowska for over two years. Anna lives in the home Kyle owns, and they will live together there in Salem, New Hampshire when he is released from incarceration. Although he still legally married to a woman from whom he is estranged (they married young when Kyle was placed on active duty in Afghanistan), he plans to finalize the process of divorce when he is released.

In 2016, at 17 years old, Kyle enlisted in the United States Army. He did so because he wanted to serve our country and because his father served. In fact, Kyle sought to be a combat engineer because that is what his father did. It is no surprise that a young man who desperately sought guidance and structure found his way to the United States Army. Kyle served four years dedicated to the important service of our country's safety and security. Kyle served as a combat engineer in Afghanistan and experienced a lot of combat. He earned an honorable discharge from the Army, and while there earned the following honors: two Army Achievement medals; Overseas Medal; Good Conduct medal; AFG Campaign medal; Combat Action badge; NATO-Non-Article 5 badge; Army Service ribbon; and the National Defense Service medal.

Once he returned from combat and to the United States, Kyle had consistent thoughts of death. His stress became progressively worse. When he tried to obtain mental health services, he was told that if he was not presently suicidal it would take months before he could obtain an appointment. He spent six months at Fort Knox after his combat tour, and he never received any mental health services.

After his honorable discharge from the United States military, he began to smoke marijuana to help ameliorate the mental health trauma he was experiencing.  This began in January 2020, and it continued regularly until September 2020.  Once he stopped, his mental health problems became worse.

Kyle also suffered a traumatic brain injury while at Fort Knox and then a second one in September 2020 as a result of a car accident.  The panic attacks Kyle suffered continued from the time of his return from Afghanistan to this day.

Other than serving in the military, he has lived his entire life in Salem, New Hampshire.  At a young age, and on his own, he owns his own home in Salem.  He hopes to pursue a college degree and build a life for himself and Anna.  Looking back at some of the things he espoused that have been presented to this Court, Kyle does not know how he became that person.  However, recent studies as reported in mainstream media have documented the growing number of white nationalist/extremist ideology that grows among members of the United States military.  See, e.g., Inside the U.S. military's battle with white supremacy and far-right extremism (nbcnews.com).  Kyle did not espouse these views prior to his service, but he obviously did when he came home.  He has done much to reflect and undo the type of thinking with which he was imbued during his time in the United States Army.

2.    Nature and Circumstances of the Offense

Kyle committed the acts with which he is charged.  However, he never attempted or intended to cause any actual harm to anyone.  As well, his actions derived the influence and mental health problems he suffered while in and after his time in combat.  It is very likely

that Kyle's actions in this case, and the mindset that allowed him commit these offenses, is connected to the instability and unusual influences of his time in the military.

## IV.      Other 18 U.S.C. § 3553 Factors

### A.      The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, to Provide Just Punishment for the Offense, to Afford Adequate Deterrence to Criminal Conduct, and to Protect the Public from Further Crimes of the Defendant

A sentence of time-served (or 12 months and one day), followed by period of supervised release, is substantial, reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offenses Kyle committed.  The proposed sentence affords adequate deterrence to criminal conduct, and it protects the public from Kyle committing any future crimes.  Kyle had never been incarcerated prior to his arrest in this matter, and he has already experienced life-changing incarceration at this point.

### B.      The Kinds of Sentences Available, the Guidelines and Policy Statements Issued by the Sentencing Commission, Including the Advisory Guideline Range, and the Need to Avoid Unwarranted Sentencing Disparity Among Defendants with Similar Records That Have Been Found Guilty of Similar Conduct.

The sentence recommended here is available and the variance Kyle requests from the government's recommendation takes into account all of the 18 U.S.C. § 3553(a) factors as well as the facts and circumstances of the offense and Kyle.  The sentence does not represent a marked deviation from the range that similarly situated defendants typically face, and thus should not cause any significant sentencing disparity among those defendants.

### C.      Other Mitigating Factors

There are a substantial mitigating factors that call for the sentence requested here. This Court may now consider those mitigating factors that the advisory guidelines prohibit:

11

e.g., poverty, racial discrimination and humiliation, drug abuse and addiction, dysfunctional

family background, lack of guidance as a youth, etc.  See <u>United States v. Ranum</u>, 353

F.Supp.2d 984 (E.D. Wisc. 2005), *et seq.* (infra).  Also, the Defendant here notes that many

courts believe that the Sentencing Guidelines are generally too harsh.  <u>See</u> August 9, 2003

Speech of Justice Anthony Kennedy at the ABA Annual Meeting (available at

**http://www.abanews.org/kencomm/amkspeech03.html**) ("Our resources are misspent, our

punishments too severe; our sentences too long... the sentencing guidelines are responsible in

part for the increased terms.... [and they] should be revised downward."); <u>Ranum</u>**,** 353

F.Supp. 2d at 985 n.1 (quoting Justice Kennedy's statement that "our punishments [are] too

severe, our sentences too long")**;** <u>United States v. Antonakopoulos</u> 399 F.3d 68, 81 (1st Cir.

2005) ("History shows that the mandatory nature of the Guidelines has produced particular

results which led trial judges to express that the sentences imposed were unjust, grossly

unfair, or disproportionate to the crime committed, and the judges would otherwise have

sentenced differently."); <u>Montanye v. United States</u>, 77 F.3d 226, 233 (8th Cir. 1996)

(<u>Bright</u>, J., dissenting) ("By any ordinary measure outside the guidelines, I would think this

sentence would be considered draconian, unnecessarily harsh and unreasonable."); <u>United</u>

<u>States v. Andruska</u>, 964 F.2d 640, 646-47 (7th Cir. 1992) (<u>Will</u>, Senior Judge, concurring)

("the irrationality and draconian nature of the Guidelines sentencing process is again

unhappily reflected in this case").

        1.      <u>This Is Kyle's First Conviction and Incarceration</u>

Prior to this matter, Kyle had never been charged, let alone convicted, of any offense.

At his age, these factors reflect that the effects of incarceration and being a life-long federal

felon will act as substantial punishment for an honorably-discharged veteran, and they will

act as a specific and general deterrent.  Many courts across the nation have recognized this

rationale as a reason or basis to apply a below-guideline sentence.  See United States v. Paul,

561 F.3d 970 (9th Cir. 2009) (where defendant convicted of embezzlement and guidelines

10-16 months, court's within guideline sentence of 15 months unreasonably high in part

because Paul was a first-time offender with no criminal record whatsoever); United States v.

Autery, 555 F.3d 864 (9th Cir. 2009) (where defendant convicted of possession of child

pornography and where guidelines 41-51 months, court's *sua sponte* variance to probation

not unreasonable in part because defendant's first conviction and Crim. History Level I "did

not fully account or his complete lack of criminal history" because defendant with minor

criminal history still falls in category I);  United States v. Huckins, (10th Cir. 2008) 529 F.3d

1312 (where defendant convicted of possession of child pornography and guidelines 78-97

months, court's variance to 24 months proper in-part because this was  defendant's first

conviction – rejecting government's argument that guidelines already considered this by

placing defendant in criminal category I "although the Guidelines discourage granting a

downward departure based upon criminal history when the defendant has been placed in a

criminal history category of  I … this is a not a departure case, it is a variance case … and,

after *Gall* and *Kimbrough*, a factor's disfavor by the Guidelines no longer excludes it from

consideration under § 3553(a)....  Therefore, a district court may weigh a defendant's lack of

a criminal record, even when the defendant has been placed into a criminal history category

of I, in its § 3553(a) analysis."); see also Report of USSC (May 2004) "*Recidivism and the*

*'First Offender'*,"  ("The analysis [of empirical data on re-offending] delineates recidivism

risk for offenders with minimal prior criminal history and shows that the risk is lowest for

offenders with the least experience in the criminal justice system. Offenders with zero

criminal history points have lower recidivism rates than offenders with one or more criminal history points.  Even among offenders with zero criminal history points, offenders who have never been arrested have the lowest recidivism risk of all."); United States v. Duane, 533 F.3d 441 (6th Cir. 2008) ("[T]he district court did not respond to Duane's first argument — that he deserved a more lenient sentence because he had zero criminal history points.  This was not a particularly strong argument given that Duane's criminal history category was taken into account in determining his Guidelines range.  But the argument was not completely frivolous.  Because Duane had zero points at age 57, he might plausibly argue that even category I — which applies when a defendant has zero or one criminal history point(s) — overstated his criminal history to some degree."); United States v .Cabrera, 567 F.Supp.2d 271 (D. Mass. 2008) (where defendant convicted of possession of drugs with intent to distribute and guidelines 70-78 months, court imposed sentence of 24 months in part because "concerns about recidivism (see 18 U.S.C. § 3553(a)(2)(c)) compel a sentence still substantially" lower).  The Sentencing Commission's report, Recidivism and the "First Offender" (May 2004), available at

http://www.ussc.gov/publicat/Recidivism_FirstOffender.pdf, suggests that individuals -- like Abiola -- with zero criminal history points are less likely to recidivate than all other offenders … even for offenders with only one criminal history point. Id. at 13.

As well, Kyle is a first-time offender, and any amount of prison time is more significant to him as compared to someone who has previously been incarcerated.  United States v. Paul 2007 WL 2384234 (9th Cir. Aug. 17, 2007) (unpub.) (within guideline sentence of 16 months (high end) for taking government money unreasonably high in part because Paul was "a first-time offender with absolutely no criminal record whatsoever"); United

States v. Baker, 445 F.3d 987 (7th Cir. 2006)  (in distribution of child pornography case,

court affirms below-guideline sentence of 78 months (guidelines called for 108) noting that

"significant is the district court's finding that a prison term would mean more to Mr. Baker

than to a defendant who previously had been imprisoned.  Consideration of this factor is

consistent with§ 3553's directive that the sentence reflects the need for "just punishment," *id.*

§ 3553(a)(2)(A), and "adequate deterrence," *id.* § 3553(a)(2)(B)"); United States v. Santoya,

493 F.Supp.2d 1075 (E.D. Wisc. 2007) (in distribution of cocaine case where defendant was

career offender, below-guideline sentence appropriate because a lesser period of

imprisonment necessary to deter a defendant who has not previously been subject to lengthy

incarceration and where "the sentencing commission has acknowledged that when career

offender status is based on relatively minor drug offenses, the guidelines may create a

sentence greater than necessary");  United States v. Willis, 479 F.Supp.2d 927 (E.D. Wis.

2007) (in drug case where guideline range was 120 months but statutory maximum was 60

months, sentence of one year and one day sufficient in part because sentence "sentence

provided a substantial punishment for someone like defendant, who had never before been to

jail and who engaged in no violence or dealing herself"); United States v. McGee**,** 479

F.Supp.2d 910 (E.D. Wisc. 2007) (in heroin distribution case where guideline range was 21-

27 months because defender got mitigating role reduction and safety valve, sentence of one

year and one day imposed because guideline range in part because defendant "had never

before been to prison and 'generally a lesser period of imprisonment is required to deter a

defendant not previously subject to lengthy incarceration than is necessary to deter a

defendant who has already served some serious time yet continues to reoffend.'"); United

States v. Cull, 446 F.Supp.2d 961 (E.D. Wisc. 2006) (in marijuana case where guidelines 10

to 14 months, though defendant "not entitled to departure under pre-Booker standards" and where "nothing extraordinary about the case or the defendant," court imposed two months jail with four months home confinement as a condition of supervised release imposed because "Defendant had never been confined before, so [two months jail time] was sufficient to impress upon him the seriousness of the offense and to deter others under similar circumstances."); United States  v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) ("Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend.").

2.      Post-offense rehabilitation.

Many courts have held that post-offense rehabilitation may be a basis to support sentencing below the applicable guideline range.  *See, e.g.,* United States v. Bradstreet, 207 F.3d 76, 78 (1st Cir. 2000) (affirming downward departure for post-sentencing rehabilitation); United States v. Sally, 116 F.3d 76, 80 (3rd Cir. 1997) (holding post-offense rehabilitation efforts may constitute a sufficient factor warranting downward departure provided that efforts are so exceptional as to remove the particular case from the heartland in which the acceptance of responsibility guideline was intended to apply); United States v. Chapman, 356 F.3d 843 (8th Cir. 2004) (holding that post-offense rehabilitation can warrant departure eve if defendant did not accept responsibility); United States v. Whitaker, 152 F.3d 1238, 1240-41 (10th Cir. 1998) (authorizing departure for post-offense drug rehabilitation, overruling prior circuit precedent).

Since being arrested in this matter, Kyle has worked to make himself a better person, as well as understand the factors inside him that brought him to the point in his life where he

committed the subject offenses.  In that regard, he has taken advantage of nearly every course or program offered to him while incarcerated.  He has completed over 80 hours of course work during his incarceration.  These courses include, but are not limited to, the following:  PTSD for Veterans; Stressful Life Events; Beyond Prison – Probation and Parole; Thinking for the Future – CBT; Peace Education; A Guide Through the 12 Steps of Recovery; Anger Management; Aggression Replacement Therapy; Learning How to Be a Better Parent; and a variety of traditional education courses, technical skill courses, and religious courses.  Kyle has tried to use the time he has been incarcerated to learn and understand himself and what he needs to do in the future to never be back in a courtroom.

### 3.    Kyle Received Lack of Guidance in His Youth

The Court also should consider that Kyle had a lack of guidance as youth due to the nature in which he was raised.  Again, one can reasonably consider whether and to what extent Kyle's experiences as a child allowed him to become a federal felon.  See United States v. Floyd, 945 F.2d 1096 (9th Cir. 1991) (in drug case, court affirms departure from guideline range of 30 years to life to 17 years because of defendant's abandonment by his parents and lack of guidance as a youth –rendering defendant less culpable; also observing that "a criminal sentence must reflect an individualized assessment of a particular defendant's culpability rather than a mechanistic application of a given sentence to a given category of crime"); Landrigan v. Schriro  441 F.3d 638, 648 (9th Cir. 2006) ("Where a defendant's crime is attributable to a disadvantaged background or emotional or mental problems the defendant is less culpable than one without the excuse.").

### 3.    Kyle's Military Service Supports a Variance

This Court can and should consider Kyle's outstanding military service to this country, and the experiences he suffered while doing so as a further reason to vary from the guideline sentence.  See <u>Porter v. McCollom</u>, 558 U.S. 30 (2009) ("Our Nation has a long tradition of according leniency to veterans in recognition of their service, especially for those who fought on the front lines as Porter did"); <u>Kimbrough v. United States</u>. 552 U.S. 85 (2007)  (in case of conspiracy to distribute crack and use of gun, district court was not unreasonable in giving below guideline sentence to mandatory minimum of 15 years  where courted noted that defendant "had served in combat during Operation Desert Storm and received an honorable discharge from the Marine Corps");  <u>United States v. Howe</u>, 543 F.3d 128  (3rd Cir. 2008) (where defendant convicted of mail fraud with loss of $150,000 and guidelines 18-24 months, sentence of probation with three months home detention not unreasonable in part because of Howe's twenty years of military service followed by honorable discharge.); <u>United States v. Claudio</u>, CR. No. 9244 (D.Ore. October 4, 1993) (Judge Owen Panner departed downward from because of the defendant's "extraordinary" military service); <u>United States v. Leigh</u>, Cr 91-96-FR (D.Ore.)  (Judge Helen Frye granted a substantial downward departure in a bank robbery case based in part on prior military service).

**V.    Request for Relief**

Wherefore, Kyle Morris, through counsel, respectfully requests that the Court grant the relief requested, specifically that the Court impose the following sentence:

      a)      Time served, followed by a term of supervised release;

      b)      If additional incarceration is imposed, 12 months and one day; and

      c)      The $100.00 special assessment fee.

Finally, the Defendant requests any such other relief as may be deemed just and equitable.

Respectfully submitted,

Kyle Morris
By and through his counsel,

DATED:  May 1, 2023                      /s/Charles J. Keefe
                                         Charles J. Keefe (N.H. Bar No. 14209)
                                         Wilson, Bush & Keefe, P.C.
                                         378 Main Street
                                         Nashua, NH 03060
                                         (603) 595-0007
                                         keefe@wbdklaw.com

**Certificate of Service**

I, Charles J. Keefe, hereby certify that true copies of the above document were delivered to AUSA Alexander Chen and the United States Probation Office.

                                         /s/Charles J. Keefe
                                         Charles J. Keefe

19